**Leonard J. SCHRADER, Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

No. 45–89C.

United States Claims Court.

April 23, 1990.

Leonard J. Schrader, Washington, D.C., pro se.

John S. Groat, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. Captain Douglas Wade, Dept. of the Air Force, of counsel.

## OPINION

MARGOLIS, Judge.

### BACKGROUND

On July 30, 1945, the plaintiff, Leonard J. Schrader, retired from active duty in the Army Air Corps as a result of a service-related disability. At the time of his retire-

ment, he held the rank of first lieutenant, second pay period. Since that time, Schrader has received military retirement pay every month. Pursuant to Congressional authorizations, the amount of that pay has increased from $125 per month in 1945, to $737 per month as of December 1988. Schrader filed suit in this court on January 30, 1989, alleging that he has been underpaid by the government for an unspecified period of time, and in an unspecified amount. Plaintiff sues for back retirement pay plus interest, seeks a declaratory judgment to correct his records, and moves for summary judgment. The defendant has filed a motion to dismiss for failure to state a claim or, in the alternative, for summary judgment.

The dispute in this case stems from a disagreement as to how plaintiff's retirement pay should be calculated. There is no dispute over the circumstances of his retirement, his rank at that time, or the amount he has in fact been paid over the past 45 years. Plaintiff believes that he should be receiving approximately $1,309 per month, an amount which represents 75 percent of the salary currently being paid to an active-duty first lieutenant, second pay period. Defendant argues that the amount of plaintiff's retirement compensation—$737 per month at the time the suit was filed—was properly computed by adding to the original $125 per month, the periodic cost of living adjustments voted by Congress and determined by the Secretary of Defense over the intervening years.

## DISCUSSION

Because there are no genuine issues as to any material facts, the sole determination to be made by this court is whether the government properly calculated plaintiff's retirement pay in accordance with governing statutes.

### The Law Governing at the Time of Plaintiff's Retirement

After a little more than two years of active service, plaintiff was retired from the Army Air Corps on July 30, 1945 because of a service-related disability. Under the law then in effect, officers retiring from the Army due to a disability were entitled to disability retirement pay regardless of the percentage of their disability. Act of April 3, 1939, ch. 35, § 5, 53 Stat. 555, 557. Therefore, at the time of his retirement, plaintiff was entitled to retirement pay computed on the basis "of seventy-five per centum of the pay of the rank upon which [he] retired." Act of July 15, 1870, ch. 294, § 24, 16 Stat. 315, 320. Plaintiff's entitlement at retirement was $125 per month, or 75 percent of the monthly pay of an active-duty first lieutenant, second pay period.

### Career Compensation Act of 1949

In 1949, the Congress enacted the Career Compensation Act, ch. 681, 63 Stat. 802 (CCA or Act). The CCA changed the method by which disability retirement pay is determined. Under that statute, members of the armed services retired because of disability are ineligible for retirement pay unless their disability is rated at 30 percent or more. CCA, § 402(b)(3). When the Career Compensation Act was passed, the records of all members retired prior to passage of the Act were reviewed, and disability ratings were established for them. At that time, Schrader's disability rating was established at ten percent. Because of his minimal disability rating, Schrader was ineligible for disability retirement pay under the CCA. Plaintiff could have elected to receive disability severance pay under § 411 of the Act, but he did not do so.

However, the CCA also included a saving provision (§ 519) which provided that persons retired prior to the enactment of the CCA could elect to continue receiving the retirement benefits to which they were previously entitled. Because the 1939 Act under which plaintiff retired provided more generous benefits for a retiree with a disability rated at less than 30 percent, Schrader exercised his right to remain under the 1939 law.*

---

* Schrader later executed a form dated December 2, 1949, indicating that he "desire[d] considera-

tion for increased benefits under the provisions of Public Law 351 (Career Compensation Act)

*Computation of Retired Pay*

In 1952, Congress approved an increase of four percent for all retirees, and a four percent increase in active duty basic pay rates. Pub.L. No. 82–346, 66 Stat. 79 (1952). In 1955, Congress increased basic pay rates for active duty members, provided for a six percent increase for disability retired saved pay accounts (such as plaintiff's), and provided for recomputation of retired accounts *other than saved pay accounts,* based on the new basic pay accounts. Career Incentive Act, Pub.L. No. 84–20, 69 Stat. 18, 22–23 (1955). Retirees who were covered by the CCA's "saved pay" provision were not entitled to have their retirement pay recomputed based on the increase in the active duty basic pay rates. *Id.* at 23.

The Act of May 20, 1958 decoupled the rates of retired and active-duty pay. Pub.L. No. 85–422, 72 Stat. 122, 128. The Act is codified at 10 U.S.C. § 1401a(a) (1982), which states that "the retired pay of a member or former member of an armed force may not be recomputed to reflect any increase in the rates of basic pay *for* members of the armed forces." Therefore, on June 1, 1958 *all* retirees became ineligible for increases tied to the increase in active duty base pay. In 1963, Congress enacted Pub.L. No. 88–132, 77 Stat. 210, 214, *codified at* 10 U.S.C. § 1401a(b) (1982), which provided that future cost-of-living adjustments (COLAs) for retirees would be determined by the Secretary of Defense, based on the Consumer Price Index (CPI).

In any given year, the Secretary of Defense determines the amount, if any, by which basic pay rates for active duty members are to increase. The Secretary also establishes, by reference to the CPI, the amount by which retirees' pay is to increase. The COLAs established for retirees are separate and distinct from the increases in the basic rates of pay for active duty members of the armed forces. In other words, retirees are entitled to a

COLA calculated as a percentage of their previous year's retirement pay, *not* calculated as a percentage of an active duty member's basic pay.

Plaintiff was originally retired at 75 percent of the pay of a first lieutenant, second pay period, or $125. He received the 1952 and 1955 legislative increases authorized for retirees with ' retired saved pay accounts, and all of the COLAs since then. Although he was ineligible for the 1955 recomputation of retirement pay for CCA-covered retirees, the plaintiff each year (including 1955) has received the same percentage COLA as all other retirees. Since 1958, *no* retiree has been entitled to receive increases based on changes in the active duty basic pay rates.

■ Military retirement pay, and the way it is computed, can be prospectively altered without offending the due process clause of the fifth amendment to the United States Constitution. *Costello v. United States,* 587 F.2d 424, 427–28 (9th Cir.1978), *cert. denied,* 442 U.S. 929, 99 S.Ct. 2858, 61 L.Ed.2d 296 (1979). In 1949, 1958 and 1963, the Congress enacted legislation which changed the ways in which military retirement pay was to be calculated. The plaintiff has no vested right in military pay to be earned in the future, and no claim can arise from the government's actions changing the method of computing that pay.

■ Finally, the plaintiff asserts that he retired relying on a "promise" of the president of the Army retiring board that he would always receive 75 percent of active duty pay. There is no evidence in the record as to the circumstances of this promise, but, in any event, the benefits associated with government employment are based on statutes and regulations, not on promises or compacts. *Kania v. United States,* 227 Ct.Cl. 458, 464–65, 650 F.2d 264, 268, *cert. denied,* 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981). Therefore, any promise to plaintiff, if one was made, is of no effect.

1949." However, as noted above, Schrader was not eligible for increased benefits under the CCA because his disability rating was less than 30 percent. Irrespective of his request to be considered under the CCA, it appears that Schrader at all times has been paid according to the provisions of the 1939 Act.

## CONCLUSION

For the reasons stated above, this court finds that plaintiff has been and continues to be paid in accordance with governing statutes. Therefore, the defendant's motion for summary judgment is granted, and the plaintiff's motions are denied. Accordingly, the Clerk will dismiss the complaint. Each party is to bear its own costs.